UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------X
HECTOR GARCIA, DENNIS GEORGATOS       Civil Action No.
and NATHALY ZAPATA-CHICA,

                Plaintiffs,       **COMPLAINT**

     -against-       **Plaintiffs Demand a Jury Trial**

MASCOTT CORPORATION d/b/a
Markers Restaurant and STEPHEN PARKER,
in his individual capacity,

                Defendants.
---------------------------------------------------------X

Plaintiffs Hector Garcia, Dennis Georgatos and Nathaly Zapata-Chica (collectively "Plaintiffs") allege against Defendants Mascott Corporation d/b/a Markers Restaurant and Stephen Parker (collectively "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Mascott Corporation holds itself out as the owner and operator of restaurant brands which offer "casual American cuisine in a cool, hip environment that caters to business clientele and has a vibrant after work happy hour." Yet, in stark contrast to its progressive advertising, Mascott Corporation's employment practices are stuck generations in the past. Rather than offering "a cool, hip environment", Plaintiffs' were forced to endure a pervasive sexually charged hostile working environment, where employees such as the Plaintiffs were mistreated and ultimately retaliated against for mustering the courage to complain of sexual harassment.

2. The Federal and New Jersey State anti-discrimination and anti-retaliation laws are intended to afford employees safety from sexual harassment and the protection to be critical of their employer's discriminatory practices. As such, this is an action for

declaratory, injunctive and monetary relief to redress Defendants' unlawful employment practices committed against the Plaintiffs. The unlawful discrimination and retaliation described herein was committed in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD").

**JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES**

3. This Court has subject matter jurisdiction over Plaintiffs' claims under Title VII pursuant to 28 U.S.C. § 1331 and 1341, because those claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

5. Plaintiff Hector Garcia duly filed a Charge of Discrimination (EEOC Charge No. 520-2016-01759) on or about March 1, 2016.

6. Plaintiff Dennis Georgatos duly filed a Charge of Discrimination (EEOC Charge No. 520-2016-01719) on or about March 1, 2016.

7. Plaintiff Nathaly Zapata-Chica duly filed a Charge of Discrimination (EEOC Charge No. 520-2016-01733) on or about March 1, 2016.

8. The EEOC sent a Notice of Right to Sue to Plaintiff Garcia, Plaintiff Georgatos and Plaintiff Zapata-Chica on November 3, 2016 (all of which are annexed hereto as Exhibit A).

9. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

10. Plaintiff Hector Garcia ("Plaintiff Garcia") is an individual who is a resident of Richmond County in the State of New York.

11. Plaintiff Dennis Georgatos ("Plaintiff Georgatos") is an individual who is a resident of Bergen County in the State of New Jersey

12. Plaintiff Nathaly Zapata-Chica ("Plaintiff Zapata-Chica") is a female individual who is a resident of Hudson County in the State of New Jersey.

13. Defendant Mascott Corporation d/b/a Markers Restaurant ("Defendant Markers") was and is a corporation organized and existing under and by virtue of the laws of the State of New Jersey.

14. Defendant Markers "is a classic American grill located on the Waterfront in the Harborside Financial Center, Jersey City, New Jersey. Markers offers its patrons a broad menu of lunch and dinner options, Monday through Friday, in its main dining area. Additionally, Markers offers its customers on-the-go stylized takeout and delivery dining options through its 'Markers Express' venture."

15. Defendant Markers was located at the premises designated and / or more commonly known as 153 Plaza II, Harborside Financial Center, Jersey City, NJ 07311.

16. That at all times herein relevant, Defendant Stephen Parker ("Defendant Parker") was and is a resident of the State of New Jersey.

17. That at all times herein relevant, Defendant Parker was employed by Defendant Markers.

18. That at all times herein relevant, Defendant Parker was employed by Defendant Markers as Corporate Chef and Managing Partner.

19. That at all times herein relevant, Scott Gillman ("Gillman") was and is a resident of the State of New Jersey.

20. That at all times herein relevant, Gillman was and is employed by Defendant Markers.

21. That at all times herein relevant, Gillman was and is employed by Defendant Markers as Chief Executive Officer.

## FACTUAL ALLEGATIONS

22. On or about April 2015, Plaintiff Garcia was hired by Defendant Markers as the Manager of Markers Express.

23. Plaintiff Garcia earned an annual salary of approximately $63,000.00.

24. In around August 2015, Plaintiff Georgatos was hired by Defendant Markers as the General Manager of Defendant Markers, Markers Express and Plaza 10.

25. Plaintiff Georgatos earned an annual salary of approximately $95,000.00.

26. On or about September 2015, Defendant Markers hired Plaintiff Zapata-Chica as a Cashier.

27. Upon her hire, Plaintiff Zapata-Chica earned $10.00 per hour.

28. Plaintiff Zapata-Chica reported directly to Plaintiff Garcia.

29. Plaintiff Garcia reported directly to Plaintiff Georgatos.

30. Plaintiff Georgatos reported to Defendant Parker and Gillman.

31. Defendant Parker had supervisory authority over Plaintiff Zapata-Chica, Plaintiff Garcia and Plaintiff Georgatos during their employment with Defendant Markers.

32. During the course of the employment of Plaintiffs Garcia, Georgatos and Zapata-Chica, the Defendants subjected them to numerous acts of sexual harassment, unlawful discrimination, unlawful retaliation and unlawful employment practices.

33. On one occasion, Defendant Parker left a note for Plaintiff Garcia with the counted cash for the day. The note specifically said, "Hector, this is for [you] to go buy a prostitute."

34. Defendant Parker would also comment about sticking a large pepper shaker up Plaintiff Garcia's butt.

35. Defendant Parker also asked Plaintiff Garcia to bend over and take his pants off. Plaintiff Garcia denied Defendant Parker's unwelcome advances.

36. Defendant Parker would often make sexual comments about the female staff at Defendant Markers. By way of example, Defendant Parker would discuss how he slept with certain employees – going into great detail of his purported sexual conquests (including the oral sex he received).

37. On or about July 19, 2015, Plaintiff Garcia got married. Upon returning from his honeymoon, Defendant Parker, without any basis, commented about how tired Plaintiff Garcia looked from having so much sex. Further, Defendant Parker asked Plaintiff Garcia about his sex life with his wife; and said that Plaintiff Garcia would be divorced soon because he worked so many hours.

38. Defendant Parker also told Plaintiff Garcia that he must have a big dick.

39. Plaintiff Garcia found Defendant Parker's sexual remarks offensive and highly inappropriate for the workplace.

40. The sexual harassment at Defendant Markers was ongoing and pervasive and escalated with time, turning physical.

41. Defendant Parker would touch Plaintiff Garcia on his thighs and butt, without consent.

42. Defendant Parker would also put his arm around Plaintiff Garcia, feel his shoulders and place his hands on Plaintiff Garcia's back.

43. In other instances, Defendant Parker would tell employees who spoke with Plaintiff Zapata-Chica, "Don't talk to 'my boo' like that."

44. On or about Wednesday, January 27, 2016, Defendant Parker hugged Plaintiff Zapata-Chica, without invitation.

45. Defendant Parker also rubbed his face and mouth on Plaintiff Zapata-Chica's neck, attempting to kiss her.

46. Plaintiff Zapata-Chica attempted to push Defendant Parker off her, telling him, "What are you doing?"

47. Plaintiff Zapata-Chica felt highly offended by Defendant Parker's unwelcome sexual advances.

48. Plaintiff Zapata-Chica complained about Defendant Parker's inappropriate behavior to her immediate supervisor, Plaintiff Garcia.

49. Additionally, later that day, Plaintiff Zapata-Chica knocked on the door to the common office at Defendant Markers to hand in her cash drawer for the day (Defendant Parker, Plaintiff Garcia and Plaintiff Georgatos were present in the common office). Defendant Parker told Plaintiff Zapata-Chica to come into the room. As Plaintiff Zapata-Chica walked into the room, Defendant Parker stood up and his pants fell down. Embarrassed, Plaintiff Zapata-Chica quickly left the room.

50. Plaintiff Georgatos told Defendant Parker that he could not act inappropriately with staff members. Not discouraged in any way, Defendant Parker told Plaintiff Georgatos that if he wanted, he could "have her" [Plaintiff Zapata-Chica]. Further, Defendant Parker bragged that he engaged in an inappropriate relationship with Krystal Del Valle – a Defendant Markers' female employee.

51. Later, when confronted by Ms. Del Valle, Defendant Parker apologized and admitted that no such relationship ever existed between the two of them.

52. On or about January 28, 2016, while in Defendant Garcia's presence, Defendant Parker took out his penis while Plaintiff Georgatos was taking a phone call.  Defendant Parker shook his penis and made a fornicating posture behind Plaintiff Georgatos.  Defendant Parker held his penis though his pants and placed it just inches from Plaintiff Georgatos' ear.  Plaintiff Garcia and Plaintiff Georgatos were highly offended by Defendant Parker's sexual behavior in the workplace.

53. On or about Friday, January 29, 2016, Plaintiff Georgatos verbally complained to John White – Defendant Markers Human Resources Manager about the sexual harassment at Defendant Markers.

54. On or about January 31, 2016, Plaintiff Georgatos emailed Mr. White a written complaint, detailing Defendant Parker's sexually inappropriate behavior.

55. On or about February 1, 2016, Defendant Markers terminated the employment of Plaintiff Georgatos.

56. On or about February 1, 2016, Defendant Markers terminated the employment of Plaintiff Garcia.

57. Both Plaintiff Georgatos and Plaintiff Garcia were terminated just one day after Plaintiff Georgatos formally emailed a complaint of sexual harassment to Defendant Markers HR.

58. Plaintiff Georgatos was terminated in retaliation for his complaint of sexual harassment.

59. Plaintiff Garcia was terminated in retaliation for the complaint of sexual harassment.

60. On or about February 1, 2016, Plaintiff Zapata-Chica spoke with Defendant Gillman about her complaint of sexual harassment.

61. During that meeting, Defendant Gillman told Plaintiff Zapata-Chica that he was not going to be taking the complaint seriously because he had worked with Defendant Parker for a long time. Defendant Gillman also stated that he that knew that Plaintiff Zapata-Chica would miss Plaintiff Garcia's presence at Defendant Markers (alluding to an inappropriate relationship between the two, without any evidence).

62. After Plaintiff Garcia and Plaintiff Georgatos were terminated, Plaintiff Zapata-Chica directly reported to Defendant Parker – the alleged sexual harasser.

63. As Defendants conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIRST COUNT
### (Discrimination Based on Sex in Violation of Title VII)
*For All Plaintiffs*

64. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

65. By engaging in the foregoing conduct, Defendants violated Plaintiffs' rights under Title VII of the Civil Rights Act, subjecting the Plaintiffs to sexual harassment and to discrimination because of their sex.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

## SECOND COUNT
### (Hostile Work Environment Based on Sex in Violation of Title VII)
*For All Plaintiffs*

67. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

68. By engaging in the foregoing conduct, Defendants violated Plaintiffs' rights under Title VII of the Civil Rights Act, subjecting the Plaintiffs to an offensive and hostile work environment because of their sex.

69. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

### THIRD COUNT
### (Retaliation in Violation of Title VII)
*For Plaintiffs Garcia and Georgatos*

70. Plaintiffs repeat, reallege, and restate each and every paragraph above as if said paragraphs were more fully set forth herein at length.

71. By engaging in the foregoing conduct, Defendants violated Plaintiffs rights under Title VII of the Civil Rights Act, by retaliating against the Plaintiffs because of Plaintiffs opposition to the unlawful employment practices of Defendants.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

### FOURTH COUNT
### (Discrimination Based on Sex in Violation of NJLAD)
*For All Plaintiffs*

73. Plaintiffs repeat, reallege, and restate each and every paragraph above as if said paragraphs were more fully set forth herein at length.

74. By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq., by subjecting the Plaintiffs to sexual harassment and discriminating against the Plaintiffs because of their gender / sex.

75. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

## FIFTH COUNT
### (Hostile Work Environment in Violation of NJLAD)
*For All Plaintiffs*

76. Plaintiffs repeat, reallege, and restate each and every paragraph above as if said paragraphs were more fully set forth herein at length.

77. By the actions described above, among other, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq., by subjecting Plaintiffs to a hostile work environment because of their gender / sex.

78. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

## SIXTH COUNT
### (Retaliation in Violation of NJLAD)
*For Plaintiffs Garcia and Georgatos*

79. Plaintiffs repeat, reallege, and restate each and every paragraph above as if said paragraphs were more fully set forth herein at length.

80. By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq. by retaliating against the Plaintiffs for the complaints of sexual harassment and discrimination.

81. Defendants engaged in unlawful employment practices prohibited by the New Jersey Law Against Discrimination by retaliating against Plaintiffs as a result of Plaintiffs' opposition to the Defendants' unlawful employment practices.

82. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

B. An injunction and order permanently removing and clearing information to the contrary contained in Plaintiffs' employee file and restraining Defendants from engaging in such unlawful conduct;

C. An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for the loss of benefits, promotions, raises and opportunities;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for their mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused;

G. An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiffs for the harm to their professional and personal reputation and loss of career fulfillment;

H. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

I. An award of punitive damages;

J. An award of costs and attorneys' fees pursuant to applicable law; and

K. An award of such other relief this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: December 6, 2016
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

By:  */s/ Robert D. Salaman*
            _____
              Robert D. Salaman

45 Broadway, Suite 1420
New York, New York 10006
Telephone:  (212) 825-1400
Facsimile:   (212) 825-1440
rob@akinlaws.com

*Counsel for Plaintiff*